J-S17033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2692 EDA 2023 |

Appeal from the Order Entered July 11, 2023
In the Court of Common Pleas of Bucks County
Civil Division at 2023-01978

BEFORE:    BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                     **FILED JUNE 11, 2024**

J.S. (Appellant) appeals from the order denying his petition to restore his right to possess firearms pursuant to 18 Pa.C.S. § 6105(f)(1). We affirm.

Factual and Procedural History

Appellant is 37 years old. It is undisputed that when he was 14 years old, Appellant "was involuntarily committed under section []302 of the Mental Health Procedures Act [(MHPA)], 50 P.S. § 7302[,] and then subsequently involuntarily committed for an extended term not to exceed twenty days under section 303 of the MHPA." Appellant's Brief at 6. Consequently, Appellant is prohibited from possessing firearms. **See** 18 Pa.C.S. § 6105(c)(4) (prohibiting possession of firearms by anyone "who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 … of the … [MHPA]").

In 2022, Appellant began working as a warehouse supervisor for a fireworks company. N.T., 7/10/23, at 14. The trial court explained:

> [A]ppellant … wished to have his firearm rights restored so [he] could obtain explosive privileges. Appellant explained that having explosive privileges would open up new opportunities for him at work by allowing him to handle and transport fireworks. Appellant's understanding was that he first needed to restore his firearm rights to obtain explosive privileges, per the Bureau of Alcohol, Tobacco, and Firearms. Appellant's employer confirmed this information…. While Appellant did not receive notice that his job was in jeopardy because of his inability to hold explosive rights, he communicated that his inability to hold explosive rights was holding him back from opportunities at his job.

Trial Court Opinion (TCO), 10/19/23, at 6 (footnotes omitted).

On April 10, 2023, Appellant filed a petition to restore his firearm rights pursuant to 18 Pa.C.S. § 6105(f), which provides:

> (1) Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person.

18 Pa.C.S. § 6105(f)(1).

Appellant averred he "does not present a danger to himself or others and may safely possess a firearm." Petition to Restore Firearm Rights, 4/10/23, at 1. Appellant claimed he had "established an uninterrupted period of psychological stability of over 21 years." *Id.* at 4. He stated that since "his commitment in 2001, [he] has not sought or required psychological hospitalization or outpatient treatment for any mental health conditions or incidents," and "has not demonstrated behavior that would indicate he was a

- 2 -

danger to himself or others and the cause of his commitments." ***Id.*** at 2, 4. In support, Appellant "sought a psychological evaluation from Dr. Einat Delong, Psy.D.," who concluded that Appellant's "restoration of explosive privileges and firearm rights should be granted." ***Id.*** at 2-3.

The trial court held a hearing on July 10, 2023. Appellant testified as "the only fact witness." N.T., 7/10/23, at 6. Appellant also presented his wife, mother, father, and employer as character witnesses. ***Id.***

On July 11, 2023, the trial court denied the petition without prejudice. Appellant timely appealed.[1]

Appellant presents the following questions for review:

1. Whether the trial court abused its discretion and erred in denying [Appellant]'s Petition to Restore Firearms Rights?

2. Whether the trial court abused its discretion and its decision was the result of bias and prejudice against persons once diagnosed with mental health conditions?

3. Whether the trial court abused its discretion and its decision was the result of bias and prejudice against persons using prescribed medication?

Appellant's Brief at 2.

<u>Legal Analysis</u>

"[T]he language in section 6105(f)(1) plainly leaves the decision of whether to restore the right to possess a firearm within the discretion of the trial court." ***E.G.G. v. Pennsylvania State Police***, 219 A.3d 679, 683 (Pa.

---

[1] Appellant filed a court-ordered concise statement pursuant to Pa.R.A.P. 1925(b). With the trial court's permission, he also filed a supplemental concise statement.

Super. 2019). An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record. *Id.* The trial court, as factfinder, is free to believe all, part or none of a witness' testimony. *Id.*

Instantly, Appellant fails to support his claims with citation to pertinent legal authority. *See* Appellant's Brief at 7-11. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa. Super. 2014) (citation omitted). This Court has advised repeatedly that arguments "not appropriately developed include those where the party failed to cite any authority in support of a contention." *Id.* (citation omitted). Nonetheless, we consider Appellant's argument.

Appellant initially asserts that the trial court's denial of his petition was "manifestly unreasonable" because he "has not been recommitted or required any further treatment for the mental health conditions that were identified as the basis for the involuntary commitments." Appellant's Brief at 7. Appellant claims the trial court's decision was contrary to the evidence, and notes "the absence of any evidence introduced in opposition" by the Pennsylvania State Police (PSP). *Id.* at 8.

According to Appellant, the trial court "noted a doubt" concerning his expert's evaluation of Appellant's mental health, "but antithetically adopt[ed]

the diagnosis" from Appellant's commitment in 2001. *Id.* at 9. Appellant further claims that the trial court showed "bias and prejudice" regarding his use of prescribed medication for attention deficit hyperactivity disorder (ADHD). *Id.* at 10. Appellant quotes the trial court's hearing comments, including the court's statement that it is "not a fan of adults on Adderall." *Id.* (citing N.T., 7/10/23, at 75). Appellant contends the trial court's comments "highlight the manifestly unreasonable nature of the decision." *Id.*

To the contrary, Appellee PSP cites the trial court's opinion in arguing that the trial court did not abuse its discretion. PSP's Brief at 8-11. The trial court found Appellant "failed to prove his assertion that he did not present any risk of harm to himself, or to others, within a psychological certainty." TCO at 9. The trial court explained:

> During the hearing, this [c]ourt was particularly concerned with the seriousness of the incidents which occurred in April of 2001. Appellant obviously demonstrated he had a history of being a danger to others, notably his parents and staff at St. Luke's Hospital where he was involuntarily committed. [Evidence from the] hearing also revealed [Appellant] was a danger to himself, attempting to harm himself while receiving in-patient treatment during his involuntary commitment, [and] prompting his physician to petition for him to receive further inpatient treatment against his will. [T]he incident between Appellant and his parents in November of 2004, resulting in his arrest, proved that Appellant's behavioral problems and violent behavior had not ceased after his involuntary commitment.
>
> Further, testimony from Appellant and his wife evidenced that Appellant still demonstrated explosive behavior as recently as 2015 and 2016. Appellant's wife's testimony of these events evidenced how on both occasions, Appellant was unable to cope with adverse events in his life and handled these situations by becoming intoxicated and demonstrating explosive behavior,

resulting in police officers arriving to their home. Additionally troublesome is the fact that Appellant's behavior was disruptive and concerning enough to prompt his neighbors to call the police on two occasions.

This [c]ourt also had concerns about Appellant's mental health diagnoses of bipolar disorder and explosive personality disorder. Although this [c]ourt did review Dr. Delong's report noting that Appellant was negative for bipolar disorder, this [c]ourt believed that a one-time evaluation done in preparation of this hearing is not dispositive of Appellant's overall mental condition, especially when balanced against overwhelming evidence of Appellant's severe behavioral problems in the past. Further, Dr. Delong did not testify during the hearing … to attest to her findings.

In light of these diagnoses and Appellant's history of behavioral problems, this [c]ourt was particularly concerned with the lack of mental health treatment Appellant sought after his involuntary commitment. Testimony from Appellant and Appellant's father indicated that Appellant received counselling for only a few years after his commitment in 2001. The only mental health treatment, if it can even be described as such, that Appellant currently receives[,] is via medication for his ADHD and anxiety. While this [c]ourt remarked that Adderall may be problematic for people with behavioral issues, this [c]ourt qualified its remark by noting that Appellant should talk to his doctor regarding his medication. This [c]ourt's remark during the hearing was part of a larger request for Appellant to receive talk-therapy counselling before re-filing his petition. As evident by Appellant's explosive and intoxicated incidents in 2015 and 2016, Appellant still has challenges properly coping with adverse events. As such, this [c]ourt believed that talk-therapy counselling would benefit Appellant and help him avoid inappropriate responses to triggering events in the future.

Until Appellant can show that he has undergone counselling to address his behavioral problems, this [c]ourt believes Appellant is not in the appropriate mental state to successfully regain the right to own or possess a firearm. This [c]ourt recognizes that Appellant is motivated to regain his firearm rights so that he may subsequently gain his explosive privileges, which will then allow him to progress in his career. That is exactly why this [c]ourt opted to deny Appellant's Petition *without prejudice* so he may re-file once he demonstrates that he has seriously addressed his behavioral problems via counselling.

*Id.* at 9-11 (footnote omitted; emphasis in original).

The record supports the trial court's findings. The record also provides additional context for the trial court's comments. For example, the trial court stated:

> The fact that [Appellant's] parents had to call the police again two years after [Appellant's involuntary commitment,] and the fact [Appellant] had to go to get some treatment[,] but all [he] got was medication[,] is concerning to me. I would like to see [Appellant] getting some actual mental health treatment in the form of counseling.
>
> I am not a fan of adults on Adderall. I think that it is sometimes problematic for people who have behavioral issues and some anger issues to be on Adderall, but I will allow [Appellant] to discuss that further with [his] doctor. So maybe [Appellant] can … get weaned off the Adderall and [find] something else that can help … but I would like [Appellant to] get some counseling.
>
> And it seems that the main purpose [of the petition] is for [Appellant] to get the explosives certification, but … I am going to deny it without prejudice, which means [Appellant] can come back, but again, if it comes back in front of me or any other judge, I would like to see [Appellant] get some counseling….
>
> I want to make sure [Appellant has] skills … so that if something happens, [he is] capable of dealing with it. … I need to be assured that [Appellant] can do that and that there is no concern about the danger that others may be facing if [Appellant] get[s] a firearm, or that [Appellant] may be facing if [he] get[s] a firearm.

N.T., 7/10/23, at 75-76.

Finally, we find this case analogous to *E.G.G.*, *supra*, where the trial court, "while cognizant of the evaluator's findings, ultimately concluded that lingering concerns about [the a]ppellant's mental health and his interactions

with police prevented [a]ppellant from meeting his burden of proving that his firearm rights should be restored." *E.G.G.*, 219 A.3d at 683–84.

The appellant in *E.G.G.* was involuntarily committed in 2003 and 2005. *Id.* at 681. He unsuccessfully petitioned to restore his firearm rights in 2017. *Id.* The appellant claimed the trial court erred by "'wholly ignor[ing] the report and conclusion' of the psychological evaluation, and instead focus[ed] solely on the testimony elicited about [his] prior interactions with police and the fact that [the a]ppellant is currently taking medication for anxiety and depression." *Id.* at 683 (citation omitted). The trial court denied the petition based on concern about the appellant's continuing need for psychoactive medications and psychotherapy, as well as the appellant's history of confrontational behavior, which on several occasions required police intervention. *Id.* In sum, the trial court's "lingering concerns" precluded the restoration of the appellant's firearm rights. *Id.* at 683-84. This Court found no abuse of discretion.

Our review likewise reveals no abuse of discretion in the trial court's denial of Appellant's petition to restore his right to possess firearms.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>6/11/2024</u>